IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MAYRA CARRERA, )
 )
       Plaintiff, )
 )
v. ) No. 09-1180-WEB
 )
TYSON FOODS, INC., )
TYSON FRESH MEATS, INC., )
 )
       Defendants. )
 )

**Memorandum and Order**

Plaintiff Mayra Carrera, a former employee of Tyson Fresh Meats, Inc. ("Tyson"), filed this action claiming Tyson violated her rights under Title VII of the Civil Rights Act of 1964 by subjecting her to a hostile work environment because of her gender and by ignoring her complaints of sexual harassment. The matter is now before the court on a motion for summary judgment by Tyson.

    I. *Facts*.

The court finds the following facts to be uncontroverted for purposes of the motion for summary judgment. To the extent the record discloses a genuine dispute as to any fact, the court construes such fact in plaintiff's favor for purposes of summary judgment.

    1. Plaintiff Mayra Carrera began her employment with Tyson Fresh Meats, Inc. on December 12, 2006. (See Pretrial Order, Stip. Fact 1).

    2. Carrera admits that the only complaint she made regarding alleged sexual harassment involved an incident in December 2007. (See Pretrial Order, Stip. Fact 2).

    According to Carrera, she had approximately five conversations with Pat Sanders in the

personnel department regarding her complaint. She also spoke to a superintendent named Juan and told him she wanted to move out of the line area because some of the men were making sexual movements towards her.

3. Carrera testified at her deposition that she complained because she believed four co-workers [Juan Reyes (male), Sergio Soto (male), Blanca DeSantiago (female), and Maria Morales (female)] were making what Carrera believed were "sexual movements"–i.e., moving and shaking their hips nearby her in their work area. (See Pretrial Order, Stip. Fact 3).

4. Carrera believed these "sexual movements" were targeted at her because it appeared that they were looking at her. She also thought another co-worker, her ex-boyfriend, Jesus Hermisillo, may have made comments to them about her. (See Pretrial Order, Stip. Fact 4).

About two weeks before this, plaintiff had heard rumors that they were going to do these gestures toward her, to pretend to have sex with her. Her co-workers would talk and laugh at her, mocking her.

5. During this incident, none of these co-workers ever made any sexual comments to her. (See Pretrial Order, Stip. Fact 5).

6. During this incident, none of these co-workers ever physically touched her. (See Pretrial Order, Stip. Fact 6).

7. Carrera did not hear anything that these co-workers were saying while they were making these alleged "sexual movements." (See Pretrial Order, Stip. Fact 7).

8. Carrera made a complaint to Human Resources Manager Pat Sanders in December 2007 at the time of the incident. (See Pretrial Order, Stip. Fact 8).

9. Following Carrera's complaint, Sanders immediately spoke to each of the four

coworkers. Carrera admits that none of the individuals ever made sexual movements again. (See Pretrial Order, Stip. Fact 9).

10. Following Carrera's complaint, the accused co-workers kept their distance from Carrera. Carrera admits that none of her co-workers ever made any sexual or other offensive comments towards her. (See Pretrial Order, Stip. Fact 10).

Plaintiff also complained to Mrs. Sanders that Blanca De Santiago was always behind her, talking about her and bothering her and "check[ing] my neck." According to plaintiff, De Santiago did not touch her or say anything to her, but she was always looking at her neck, and then she would go laugh and talk to other people.

11. Following the incident in December 2007, none of the employees at the Tyson facility did anything to make Carrera feel that she was being further sexually harassed, but Carrera felt ostracized by employees keeping their distance. Carrera claims to have followed up with Human Resources a number of times thereafter as to the progress of their investigation. (See Pretrial Order, Stip. Fact 11).

12. Carrera asked to be moved to a different area because she did not like the way the four co-workers "looked at her." (See Pretrial Order, Stip. Fact 12).

13. The Company moved Carrera to another work area at her request. (See Pretrial Order, Stip. Fact 13). The transfer occurred about three months after plaintiff first requested to be moved.

14. Carrera does not believe any member of management ever directly harassed her, although she feels they did not properly respond to her complaint and inquiries. (See Pretrial Order, Stip. Fact 14).

15. Carrera does not believe that her former boyfriend, Jesus Hermosillo, harassed her in any manner. (See Pretrial Order, Stip. Fact 15).

16. On June 18, 2008, Carrera spoke with Pat Sanders in Human Resources because she felt co-workers and federal inspectors from the U.S. Department of Agriculture were not speaking to her and were keeping their distance. (See Pretrial Order, Stip. Fact 16).

17. With regard to this new complaint, Carrera never heard any of the inspectors or co-workers say anything about her. (See Pretrial Order, Stip. Fact 17).

18. Also, none of the co-workers or inspectors made any sexual gestures towards Carrera. (See Pretrial Order, Stip. Fact 18).

19. After she made her Complaint, Carrera went on vacation. She never returned to work, thereby resigning her position. (See Pretrial Order, Stip. Fact 19).

Plaintiff testified that she felt so uncomfortable after being told that the investigation on her case was closed that it influenced her decision to quit.

20. Carrera's treating mental health provider agrees that, based upon the description of the events given by Carrera in her deposition and other events she has depicted in treatment, it is the treatment provider's opinion that Carrera is likely suffering from a delusional disorder or paranoid personality disorder. In the treatment provider's opinion, these conditions would not be caused by any mistreatment by Tyson or its employees, but rather by personal mental health issues of Ms. Carrera. (See Pretrial Order, Stip. Fact 20).

II. *Summary Judgment Standard*.

Summary judgment is appropriate when no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247 (1986); Fed.R.Civ.P. 56(c)(2). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp, v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party carries this burden, the opposing party cannot simply rest upon the pleadings; it must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

      III. *Summary of Arguments*.

Tyson first argues that plaintiff was not subjected to conduct so severe or pervasive as to constitute an actionable hostile work environment. It contends plaintiff made a single complaint of co-workers making gestures towards her, but the co-workers never touched her or said anything to her. It argues the Tenth Circuit has rejected hostile work environment claims on facts more severe than plaintiff presents. Even if she could establish a claim, Tyson argues plaintiff has failed to identify any basis for holding Tyson liable. It says *respondeat superior* does not apply because plaintiff was allegedly harassed by co-workers, not a supervisor. It further argues that plaintiff cannot show that any negligence by Tyson was a cause of the harassment, because Tyson acted promptly and reasonably in response to plaintiff's complaint. Finally, Tyson argues that plaintiff's complaint that co-workers or inspectors were not speaking with her and were keeping their distance do not support a hostile work environment claim.

Plaintiff argues she was subjected to offensive sexual gestures; that her complaint led to her being ostracized and made to feel uncomfortable by her co-workers; that the defendant left her in an uncomfortable position for three months before moving her to another work station; and that by then her nerves were frayed and she left her employment as a result. Plaintiff argues

5

Tyson was negligent for waiting for three months to take action after being notified that she was being made to feel uncomfortable by her co-workers.

IV. *Discussion*.

Under Title VII, it is "an unlawful employment practice for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has recognized that a claim of sex discrimination can arise from a hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66-67 (1986). To succeed on such a claim, a plaintiff must show: "(1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *Pinkerton v. Colorado Dept. of Transportation*, 563 F.3d 1052, 1058 (10th Cir. 2009) (*quoting Medina v. Income Support Div*., 413 F.3d 1131, 1134 (10th Cir.2005)).

In evaluating a hostile work environment claim, all the circumstances must be examined, including: (1) the frequency of the discriminatory misconduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening and humiliating or merely an offensive utterance; and (4) whether the conduct unreasonably interfered with the employee's work performance. *Thomas v. Avis Rent a Car*, 2011 WL 204459 (10th Cir., Jan. 24, 2011) (*citing MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005)). *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). The environment must be both subjectively and objectively hostile or abusive – i.e., one that a reasonable person would find hostile or abusive, and one that the plaintiff in fact did perceive to be so. *Faragher*, 524 U.S. at 787.

Plaintiff's response to the motion for summary judgment refers to the sexual gestures engaged in by her co-workers, but she cites no evidence to establish the frequency or severity of this conduct. If, as the uncontroverted facts indicate, this was a one-time or isolated incident, such a fact would not tend to support a finding that the workplace was so "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of ... employment and create an abusive working environment." *Cf. Harris v. Forklift Systems, Inc.*, 510 U.S. 17, (1993). *See also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (isolated incident, unless extremely serious, will not amount to discriminatory changes in the terms of employment). No evidence is cited that the conduct was physically threatening, and it is clear from the undisputed facts that the co-workers engaging in this conduct never touched plaintiff or spoke to her in derogatory terms on account of her gender. Sexual gestures of the type alleged by plaintiff would be offensive or humiliating to a reasonable person, and plaintiff undoubtedly found them so. Nevertheless, the record does not show any evidence that the conduct went beyond one or two isolated instances of boorish behavior to rise to the level of an abusive work environment. *Cf.* Faragher, 524 U.S. at 787, n.11 (noting courts require that incidents of environmental sexual harassment "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive"). The alleged subsequent conduct by Blanca DeSantiago, of standing behind plaintiff and looking at her neck, does not alter this conclusion. The record is void of evidence from which a jury could reasonably find such conduct amounted to a hostile work environment. In sum, plaintiff fails to cite any evidence to support a finding that the conduct was sufficiently severe or pervasive to alter the terms of her employment.

Even if plaintiff could establish a hostile work environment, in order to survive summary judgment she would also have to show a basis for her employer's liability. *Ford v. West*, 222 F.3d 767, 775 (10th Cir. 2000). An employer may be liable for a supervisor or co-worker's[1] harassment: (1) where the conduct occurred within the transgressor's scope of employment; (2) where the employer knew or should have known about the violation and failed to respond in a reasonable manner; or (3) where the transgressor acted with apparent authority or was aided by the agency relation. *Id*. at 775-76; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998). *See also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

Plaintiff relies upon the second theory – that Tyson was negligent because it knew or should have known about the conduct but failed to stop it. Doc. 29 at 5. *See Curran v. AMI Fireplace Co. Inc.*, 163 Fed.Appx. 714, 791, 2006 WL 137405 (10th Cir. 2006) ("If the perpetrator of the hostile work environment sexual harassment is a non-supervisory co-worker, an employer's vicarious liability depends on the plaintiff showing that the employer knew or reasonably should have known about the harassment but failed to take appropriate remedial action."). The uncontroverted facts, however, will simply not support such a claim. Plaintiff cites no evidence that Tyson should have known about the offensive conduct prior to the time plaintiff reported it to Pat Sanders in Human Resources. And it is uncontroverted that Sanders promptly talked to the co-workers involved and they never engaged in such behavior again. The evidence cited by plaintiff will not support a conclusion that the employer's remedial action, which immediately put an end to the offensive behavior, was unreasonable. *See Atkins v.*

---

[1] Plaintiff cites no evidence that any of the individuals who engaged in the gestures were supervisors who had any authority over her.

*Southwestern Bell Telephone Co.*, 137 Fed.Appx. 115, 117, 2005 WL 1444289 (10th Cir. 2005) (the applicable test is whether the employer's response is reasonably calculated to end the harassment; a stoppage of harassment shows effectiveness, which in turn evidences reasonable calculation."); *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1281 (10th Cir. 2005) ("employer's response was prompt, adequate, and effective as a matter of law").

Plaintiff testified that she was uncomfortable even after the conduct stopped because she felt co-workers or others were keeping their distance and were not speaking to her. Her claim is void of any specifics, however, that would allow a reasonable fact-finder to conclude that such conduct was sufficiently severe or pervasive to constitute a hostile work environment. *See McKenzie v. Milwaukee County*, 381 F.3d 619, 624 (7th Cir. 2004) (behavior that is "standoffish," "unfriendly," and "unapproachable" is insufficient to establish an objectively hostile work environment). Moreover, as the court noted in a previous order, such conduct by itself would not support a claim for retaliation under Title VII.[2] *See e.g., Johnson v. Weld, County, Colo.*, 594 F.3d 1202, 1216 (10th Cir. 2010) (allegations following complaints that co-workers gave plaintiff the "cold shoulder," sat farther away from her, and generally tried to avoid her are insufficient to support a claim for retaliation); *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (petty slights and "snubbing" by supervisors and co-workers is not actionable). Plaintiff also complains that it apparently took the company three months before it approved her request to transfer to a different work area. There is no evidence that she was subjected to a hostile work environment in this interim, however, and the delay by

---

[2] The court previously denied plaintiff's motion to amend the Pretrial Order to include a retaliation theory, in part on the ground that this alleged conduct would not support such a claim. Doc. 25.

itself is insufficient to support a claim for negligence where the employer's actions promptly put an end to the offensive conduct. Finally, plaintiff has failed to cite evidence to show that conditions were so intolerable that a reasonable person in her position would feel forced to resign. She thus has failed to establish any claim that she was constructively discharged from her position. *See e.g., Yearous v. Niobrara County Mem. Hospital*, 128 F3d 1351, 1356-67 (10th Cir. 1997) (not enough on constructive discharge claim to show that conditions were merely difficult or unpleasant).

V. *Conclusion*.

The Motion for Summary Judgment (Doc. 26) of defendant Tyson Fresh Meats, Inc., is GRANTED.[3] It is ordered that plaintiff Mayra Carrera shall take nothing on her claims, that the action be dismissed on the merits, and that defendants Tyson Fresh Meats, Inc. and Tyson Foods Inc. shall recover their costs of action from plaintiff Mayra Carrera.

IT IS SO ORDERED this __3rd__ Day of February, 2011, at Wichita, Ks.

                                          s/Wesley E. Brown
                                          Wesley E. Brown
                                          U.S. Senior District Judge

---

[3] No evidence is cited that co-defendant Tyson Foods, Inc. employed the plaintiff. Accordingly, the motion for summary judgment is granted with respect to both defendants.